INHABITANTS OF the TOWN
OF KITTERY

v.

Gordon W. CAMPBELL.

Supreme Judicial Court of Maine.

Argued Nov. 1, 1982.

Decided Jan. 10, 1983.

McEachern & Thornhill, Duncan A. McEachern (orally), Kittery, for plaintiff.

Stephen T. Jeffco (orally), Portsmouth, N.H., for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and VIOLETTE, JJ.

VIOLETTE, Justice.

Defendant, Gordon W. Campbell, appeals from a judgment entered in Superior Court, York County, that he violated a Kittery ordinance entitled "Ordinance Prohibiting Obscenity for Commercial Gain". On appeal, defendant challenges the constitutionality of the Kittery ordinance on several grounds: (1) the ordinance is so facially overbroad that it prohibits activity protected by the First Amendment; (2) it is so vague that it violates the Due Process Clause of the Fourteenth Amendment; and (3) it violates the Equal Protection Clause of the Fourteenth Amendment. Because we conclude that the Kittery ordinance survives these constitutional challenges, we deny the appeal and affirm the judgment below.

## I.

On June 11, 1980, an ordinance entitled "Ordinance Prohibiting Obscenity for Commercial Gain" became effective in the Town of Kittery. The ordinance imposed a fine of $100 per day for violations and it also authorized injunctive relief to prohibit further and continued violations. Defendant is the owner of "The Moonlight Reader" which is located in Kittery. At that time, defendant's business presented twice daily the exhibition of live sex shows that lasted approximately forty minutes. The shows consisted of heterosexual intercourse, masturbation, and acts of lesbianism.

Plaintiff, the Town of Kittery, commenced this action on June 20, 1980, alleging that defendant had violated the town ordinance and seeking relief in the form of a permanent injunction and a fine. Defendant ceased presenting these exhibitions on December 3, 1980. On December 9, 1980, he filed his answer and counterclaimed, alleging the ordinance was unconstitutional and seeking an injunction against enforcement of the ordinance.

The parties submitted the case to the Superior Court on an agreed statement of facts. On November 3, 1981, the Superior Court ruled that: (1) the defendant in fact violated the ordinance; (2) the ordinance was a valid exercise of the town's police power; (3) the prior restraint issue was moot; and (4) the ordinance was neither overbroad nor vague. The Superior Court denied defendant's counterclaim for an injunction and ordered that a hearing be set for the imposition of a fine.

Defendant filed notice of appeal on November 30, 1981, before the Superior Court imposed the fine.[1] On May 10, 1982, this Court dismissed that appeal for lack of jurisdiction, "there being no final judgment as [Kittery's] prayer for a permanent injunction had not been acted upon." On plaintiff's motion, the Superior Court subsequently dismissed Kittery's request for a permanent injunction.[2] Defendant's subsequent appeal was then ripe for appellate review.

## II.

■ Defendant first attacks the ordinance on the ground that it is facially overbroad. Although defendant does not con-

---

1. The Superior Court held a hearing on the fine issue on December 23, 1981. On January 7, 1982, the Superior Court fined defendant $2,200 and stayed that order pending outcome of the appeal.

2. Because the Kittery ordinance authorized the issuance of injunctions as an enforcement mechanism, defendant argued that the Kittery ordinance provided for prior restraint without constitutionally required safeguards. *Cf. Vance v. Universal Amusement Co.,* 445 U.S.

308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980); *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). At oral argument, defendant properly conceded that the dismissal of Kittery's prayer for injunctive relief made it unnecessary for us to address this issue. Therefore, we do not express any opinion whether the Kittery ordinance authorized invalid prior restraints.

tend his exhibitions are protected by the First Amendment,[3] he claims the ordinance is facially overbroad because it prohibits activity protected by the First Amendment. This Court has previously held that, under these circumstances, a party has standing to raise the issue of facial overbreadth when First Amendment rights are potentially infringed. *Gabriel v. Town of Old Orchard Beach,* 390 A.2d 1065, 1068 (Me.1978) (following *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 933, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975) and *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973)); *See also* L. Tribe, *American Constitutional Law* § 12–24 at 711–12 (1978). Allowing standing under these circumstances is an exception to the general rule that individuals ordinarily cannot litigate the rights of third parties. *Gabriel,* 390 A.2d at 1068. The *Gabriel* Court pointed out why the exception exists in the area of the First Amendment as follows:

> Litigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

*Gabriel,* 390 A.2d at 1068 (*quoting Broadrick,* 413 U.S. at 612, 93 S.Ct. at 2916).

In determining whether a challenged ordinance is facially overbroad, this Court has previously stated that "we must weigh the constitutionally protected First Amendment interest infringed upon, juxtaposed against the governmental interest served by the ordinance." *Gabriel,* 390 A.2d at 1069. Therefore, we must first determine what, if any, First Amendment interests are infringed by the ordinance.

By its stated purpose, the Kittery ordinance prohibits only the presentation of obscene exhibitions for profit. The United States Supreme Court has categorically stated that obscenity is unprotected by the First Amendment. *Miller v. California,* 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973). Although defendant concedes that the Kittery ordinance incorporated the standard for determining obscenity as set forth in *Miller,*[4] he contends the ordinance went beyond that standard by prohibiting the "lewd exhibition" of certain parts of the human body. He concludes that this prohibits mere display of the naked human body and, therefore, this statute prohibits conduct which is protected by the First Amendment. *See Schad v. Borough of Mount Ephraim,* 452 U.S. 61 65–66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981) (an exhibition may not be prohibited solely because it displays a nude human figure).

---

**3.** On appeal, defendant did not challenge the Superior Court finding that his exhibitions in fact violated the Kittery Ordinance. Furthermore, at oral argument, defendant conceded his exhibitions were not protected by the First Amendment.

**4.** The *Miller* Court set forth the following guidelines:

(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest . . .;

(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law: and

(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Miller,* 413 U.S. at 24, 93 S.Ct. at 2615. (citations omitted).

The Kittery Ordinance defines "obscene" as: any conduct of a sexual nature which:

(a) To the average individual applying contemporary community standards, considered as a whole appeals to the prurient interest;

(b) Presents in a patently offensive manner actual or simulated ultimate sexual acts, sodomy, beastiality, excratory [sic] functions, masturbation, direct physical stimulation of unclothed genitals, flagellation or torture in context of ultimate sexual acts, lewd exhibition of the human male or female genitals, pubic area, buttocks or the female breast below the top of the nipple; and

(c) Considered as a whole lacks serious literary, artistic, political or scientific value.

Kittery, Me., Obscenity Ordinance, Art. 2, § 5 (1980).

■ We disagree with defendant. In *Miller*, 413 U.S. at 25, 93 S.Ct. at 2615, the United States Supreme Court offered an example of "what a state statute could define for regulation under part (b) of the standard ... Patently offensive representations or descriptions of masturbation, excretory functions, and *lewd exhibition* of the genitals." (emphasis supplied). Although Article 2, section 5(b) of the Kittery ordinance does go beyond that example by also prohibiting lewd exhibition of the "pubic area, buttocks or the female breast below the top of the nipple," this extension does not prohibit the display of the naked human body for legitimate, non-prurient interest. Since the Kittery ordinance carefully restricts its prohibition to offensive conduct contemplated by the *Miller* standard, the ordinance on its face applies only to obscenity and thus does not infringe upon any interests protected by the First Amendment. Accordingly, defendant's facial overbreadth challenge to the Kittery ordinance must fail.

### III.

Defendant next argues that certain key words of the Kittery ordinance are so vague that the ordinance violates the Due Process Clause of the Fourteenth Amendment. Primarily, he contends that the failure to define the term "lewd" makes the ordinance vague because the average person is not put on notice as to the prohibited conduct. He also points to the ordinance's failure to define key words such as "profit" and "commercial enterprise".

■ We disagree. The vagueness doctrine rests on the due process requirements of notice. *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). The United States Supreme Court has stated that absolute precision is not necessary in defining obscenity. *Miller*, 413 U.S. at 27 n. 10, 93 S.Ct. at 2617 n. 10. "[A]ll that is

required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices....'" *Miller*, 413 U.S. at 27–28 n. 10, 93 S.Ct. at 2616–17 n. 10 (*quoting Roth v. United States*, 354 U.S. 476, 491–92, 77 S.Ct. 1304, 1312–13, 1 L.Ed.2d 1498 (1957)).

■ Regarding the term "lewd", we conclude it meets that standard in the context of the Kittery ordinance. The plain meaning of lewd is "showing, or intended to excite, lust or sexual desire." *Webster's New World Dictionary* 812 (2d Col. ed. 1980). In context, the common meaning of the term certainly conveys sufficient warning as to the proscribed conduct. Moreover, as noted previously, the United States Supreme Court used the term "lewd" to describe conduct similar to that proscribed here in its model definition for part (b) of the obscenity standard. *Miller*, 413 U.S. at 25, 93 S.Ct. at 2615. Although that model definition does not bind this Court, we consider it a significant factor concerning the resolution of the instant issue before us.

With respect to the term "commercial enterprise", the defendant erroneously claimed that the term was not defined. The definition set forth in Article 2, section 1 of the Kittery ordinance clearly met the standard set forth above.[5] Finally, defendant cannot seriously contend that "men of common intelligence must necessarily guess at [the] meaning" of the word "profit" as used in the ordinance. *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Accordingly, defendant's vagueness challenge must also fail.

### IV.

Finally, defendant argues that the ordinance violates the Equal Protection Clause of the Fourteenth Amendment. Defendant argues that the Kittery ordinance imper-

---

5. The Kittery Ordinance defines "commercial enterprise" as "any business, corporation, association or natural person established for pecuniary gain other than a theater." Kittery, Me., Obscenity Ordinance, Art. 2, § 1 (1980). "Theatre" is specifically defined in Article 2, section 2 of the ordinance.

missibly discriminates against "commercial enterprises", as defined in the ordinance, that feature obscenity for profit because the ordinance would not prohibit non-"commercial enterprises" (such as a non-profit organization as argued by defendant) from featuring obscenity for profit. We also reject this argument by defendant.

 We previously concluded that the Kittery ordinance regulates only obscenity. Therefore, since the ordinance does not impact upon fundamental rights or a suspect classification, the ordinance is subjected to the traditional "rational basis" standard of review. *McNicholas v. York Beach Village Corp.*, 394 A.2d 264, 269 (Me.1978). Under this standard, "the law will be upheld if there exists any *conceivable* state of facts which justifies the distinction." *Beaulieu v. City of Lewiston*, 440 A.2d 334, 338 (Me. 1982) (emphasis in original).

We conclude there is a rational basis for only prohibiting "commercial enterprises", as defined in the ordinance, from presenting obscene exhibitions. The Town Council could have concluded that obscenity would have greater detrimental impact on the town if presented for commercial gain. If featured commercially, there may be a greater risk that obscene exhibitions would be presented more frequently than they would otherwise be presented. Therefore, the concern that obscene exhibitions would more likely flourish in a commercial atmosphere provides a rational basis for the Town Council to subject "commercial enterprises", as defined in the ordinance, to regulation in the interest of the general welfare of the community.

The United States Supreme Court has made clear that a legislature need not "strike at all evils at the same time or in the same way." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981) (*quoting Semler v. Oregon State Board of Dental Examiners*, 294 U.S. 608, 610, 55 S.Ct. 570, 571, 79 L.Ed. 1086 (1935)). "[A] legislature 'may implement [its] program step by step, . . . adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations'." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. at 466, 101 S.Ct. at 725 (*quoting New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976)). Therefore, the Equal Protection Clause does not deny the Town of Kittery the authority to prohibit only "commercial enterprises", as defined, from featuring obscene exhibitions. As discussed above, the Town Council could rationally have decided that prohibiting "commercial enterprises" from featuring obscenity would foster greater results in eliminating this perceived evil. Accordingly, defendant's equal protection argument must also fail.

### V.

We have considered the remaining arguments raised by defendant and conclude these arguments lack merit. Accordingly, we deny the appeal and affirm the judgment below.

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.